Timothy **MOYNAHAN,** Plaintiff-Appellant,

v.

Francis **McDONALD** et al., **State's Attorneys,** Defendants-Appellees.

No. 248, Docket 72–1147.

United States Court of Appeals, Second Circuit.

Argued Dec. 7, 1972.

Decided Jan. 2, 1973.

Timothy Moynahan, pro se. (John P. McKeon, Hartford, Conn., of counsel), for plaintiff-appellant.

Jerrold H. Barnett, Asst. State's Atty. (Arnold Markle, State's Atty., New Haven, Conn., of counsel), for defendants-appellees.

Before LUMBARD, SMITH and MANSFIELD, Circuit Judges.

PER CURIAM:

Timothy Moynahan, an attorney, brought suit for damages under the Civil Rights Act, 42 U.S.C. § 1983 against three Connecticut State's Attorneys.[1] He claims that during criminal prosecutions against him in the Connecticut courts he was deprived of due process under the Fourteenth Amendment, in violation of his rights under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 2d 215 (1963), by the prosecutors' failure to turn over requested exculpatory testi-

mony given by another witness before the Grand Jury which filed charges against him. We affirm the district court's dismissal of his complaint.

Moynahan was the subject of a Connecticut one-man Grand Jury investigation which filed two indictments against him, one for perjury and a second for larceny and conspiracy. During his testimony before the Grand Jury he was advised that, while many other witnesses had "pointed a finger of suspicion" against him, his former client, John Bishop, had testified "that you never did anything wrong."

Moynahan claims that despite several requests for Bishop's Grand Jury testimony, he never received it. Upon trial on the perjury charge, which took place in April of 1970, Moynahan was acquitted; the trial for larceny and conspiracy, which occurred during June 1970, was terminated on grounds of a mistrial, with double jeopardy precluding another trial. Although not convicted Moynahan nevertheless claims that the failure to turn over Bishop's Grand Jury testimony caused him damage because it increased his uncertainty and anxiety over the outcome. He also seeks recovery for the expense of retaining counsel and for harm to his law practice.[2]

It is true that after Moynahan sought Bishop's testimony in his own proceeding, the State's Attorney, in response to a court ruling directing him to determine "in the first instance" what material was exculpatory and to turn it over to Moynahan, did not turn over Bishop's testimony. However, there is evidence that in early 1970, during trial of criminal charges against Moynahan's father and prior to trial of the charges against Moynahan, Bishop's testimony was handed over to the defense counsel with whom Moynahan was working closely. At his father's trial, Moynahan testified that he had reviewed the Grand Jury transcripts that had been made available.

1. Defendants McDonald, Secor and Gaffney were involved in various stages of two state court prosecutions against Moynahan.

2. We note that these alleged elements of damage would have been present even if the requested exculpatory material had been furnished to him.

Even if Moynahan had not examined Bishop's testimony during the course of his father's trial, there was no suppression of exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). It is undisputed that long prior to the trials against him Moynahan was apprised of the alleged exculpatory testimony and of the identity of the witness, Bishop, with whom he was acquainted. Armed with this knowledge he possessed all of the exculpatory information to which he was entitled. If he wished to offer the substance of Bishop's testimony at his trial, it was incumbent upon him to subpoena Bishop as a witness since the Grand Jury testimony would not otherwise be admissible.

In any event it is questionable whether Bishop's Grand Jury testimony was truly exculpatory. Although he testified "For all I know, Timmy Moynahan has not done anything crooked involving Charlie," he went on to state "Now, he may very well have been aware of Charlie's activities but he had nothing to do with him that I know of." At best this amounted merely to an opinion.

The order of the district court is affirmed.